## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **2:15-cr-00069-JDL** |
| | **)** | |
| **KOURTNEY WILLIAMS, VICTOR** | **)** | |
| **LARA, JR., and ISHMAEL** | **)** | |
| **DOUGLAS,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS
### A PORTION OF THE INDICTMENT

Ishmael Douglas moves to dismiss a portion of Count Six of the Indictment for failure to state an offense. ECF No. 112. Specifically, Douglas seeks to dismiss the allegation that he knowingly used, carried, and brandished a firearm during and in relation to a crime of violence. *Id.* Count Six as a whole alleges that Douglas knowingly used, carried, and brandished a firearm during and in relation to a drug trafficking crime and a crime of violence for which he may be prosecuted in a court of the United States, namely, the offenses alleged in Counts One and Two of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). ECF No. 25 at 4-5. Count One charges Douglas, along with codefendants Kourtney Williams and Victor Lara, Jr., with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846. *Id.* at 1. Count Two charges Douglas, Williams, and Lara with conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). *Id.* at 1-2.

Williams has moved to join Douglas' motion (ECF No. 149), seeking to dismiss the portion of Count Four that alleges that Williams knowingly used, carried, and

brandished a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  ECF No. 25 at 3.  A hearing was held on December 4, 2015, on Douglas' and Williams' motions.  ECF No. 151.  Subsequent to the hearing, Lara moved to join Douglas' motion (ECF No. 155), seeking to dismiss the portion of Count Seven that alleges that Lara knowingly used firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  ECF No. 25 at 5.  For the reasons discussed below, I deny the defendants' motions.

## I.  LEGAL ANALYSIS

Douglas argues that the portion of Count Six that he seeks to dismiss fails to state an offense, for two reasons: (1) the predicate crime of violence, conspiracy to commit a Hobbs Act robbery charged in Count Two, does not qualify categorically as a "crime of violence" under 18 U.S.C. § 924(c)(3), and (2) given the recent decision in *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), the "residual clause," § 924(c)(3)(B), is unconstitutionally vague.  ECF No. 112 at 1-2.

Subsection 924(c)(3) defines the term "crime of violence" as:

an offense that is a felony and--
(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C.A. § 924(c)(3) (2015).

As Count Six[1] identifies the offense charged in Count Two as the predicate crime of violence for the charge of use of a firearm during and in relation to a drug

---

[1]  For purposes of discussion, I refer only to Count Six in this order, but the same analysis applies to the respective portions of Counts Four and Seven in relation to Defendants Williams and Lara.

trafficking crime or a crime of violence, *see* ECF No. 25 at 4-5, the question presented is whether conspiracy to commit a Hobbs Act robbery qualifies as a "crime of violence" under one of the two definitions in 18 U.S.C.A. § 924(c)(3).  I first address the issue of whether the predicate offense qualifies as a "crime of violence" as defined in § 924(c)(3)(A), which I refer to as the "force clause," and then turn to the question of whether the definition of "crime of violence" in § 924(c)(3)(B), the "residual clause," is unconstitutionally vague and therefore void.

## A.    Whether a Hobbs Act Violation Qualifies as a "Crime of Violence" under § 924(c)(3)(A) ("Force Clause")

Douglas contends that a Hobbs Act robbery does not qualify as a "crime of violence" under the "force clause," § 924(c)(3)(A), because it does not "[have] as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]"  He advances three reasons in support: (1) one of the ways in which a Hobbs Act robbery can be committed is by placing another in fear of injury, which does not require "the use, attempted use, or threatened use of physical force" against another; (2) placing another in fear of injury does not require an intentional threat of physical force; and (3) Count Two of the Indictment charges him with conspiracy to commit a Hobbs Act robbery, and the elements of conspiracy do not include the use, attempted use, or threatened use of physical force against the person or property of another.  ECF No. 112.

The Government argues that a Hobbs Act robbery qualifies as a "crime of violence" under the "force clause" because, to prove the offense, the Government must establish that the defendant knowingly and willfully obtained property from the

3

person or corporation robbed by means of robbery.  ECF No. 120 at 3.  As such, the Government asserts, a Hobbs Act robbery involves "unlawfully taking or obtaining personal property from another, against his or her will, by means of actual or threatened force, or violence, or fear of injury to his or her person or property, or property in his or her custody or possession . . . ."  *Id.* at 3-4 (quoting First Circuit Pattern Jury Instructions at 4.18.1951 (2014)).

Before addressing these arguments, I note that Hobbs Act robbery has previously been treated by the First Circuit as serving as the predicate "crime of violence" for a § 924(c) charge.  *See, e.g., United States v. Morales-Machuca*, 546 F.3d 13, 18, 21-22 (1st Cir. 2008) (affirming conviction under 18 U.S.C.A. § 924(c)(1)(A)(iii) and 18 U.S.C.A. § 2 for aiding and abetting in knowing possession, use, or carrying of firearms in furtherance of or during and in relation to conspiracy to obstruct commerce by robbery and stating that a Hobbs Act violation "is a crime of violence for purposes of [18 U.S.C.A. § 924(c)(1)(A)]") (citing *United States v. Rodríguez-Casiano*, 425 F.3d 12, 13 (1st Cir. 2005)); *United States v. DeCologero*, 530 F.3d 36, 67-69 (1st Cir. 2008) (affirming conviction under § 924(c) for using or carrying a firearm during and in relation to a Hobbs Act robbery, the predicate felony); *United States v. Jiménez-Torres*, 435 F.3d 3, 6-8, 10 (1st Cir. 2006) (affirming conviction under 18 U.S.C.A. § 924(j)(1)[2] for use of a firearm in the commission of a violent

---

[2] Subsection 924(j)(1) specifies penalties for "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm . . . if the killing is a murder[,]" and therefore incorporates the definition of "crime of violence" in § 924(c)(3) by reference to § 924(c).  *See* 18 U.S.C.A. §§ 924(c), (j).  The court in *Jiménez-Torres* stated that the indictment charged the defendant with violation of § 924(j)(1) and, as a matter of law, with the lesser-included offense of using a firearm during a federal crime of violence, in violation of § 924(c)(1)(A).  *Jiménez-Torres*, 435 F.3d at 10.

federal felony that resulted in a death, where Hobbs Act robbery was the predicate felony).  The relevant decisions do not address the question in any detail, however, and, more importantly, they do not specifically recognize whether a Hobbs Act robbery qualifies as a "crime of violence" under § 924(c)(3)(A) or § 924(c)(3)(B).  The decision that addressed the issue most directly is *United States v. Turner*, where the court implicitly applied the "residual clause," § 924(c)(3)(B), and concluded that "conspiracy under the Hobbs Act constitutes a 'crime of violence' for purposes of 18 U.S.C. § 924(c)."  *See United States v. Turner*, 501 F.3d 59, 67-68 (1st Cir. 2007).[3]  In addition, the Government has neither cited these cases nor argued that the question of whether a Hobbs Act robbery may serve as a predicate "crime of violence" for

---

[3]  In *Turner*, the defendant challenged his conviction under § 924(c) arguing that conspiracy under the Hobbs Act is not a predicate "crime of violence" because an overt act is not required for a conspiracy conviction under the Hobbs Act.  *Turner*, 501 F.3d at 67.  Addressing the argument as a question of statutory interpretation, the court stated: "The overwhelming weight of authority holds that a Hobbs Act conspiracy is a 'crime of violence' for purposes of Section 924(c)."  *Id.* (citing *United States v. Taylor*, 176 F.3d 331, 337-38 (6th Cir. 1999); *United States v. Phan*, 121 F.3d 149, 152-53 (4th Cir. 1997); *United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993)).  The First Circuit continued:

These courts reason:

A conspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals.  Such a meeting of the minds enhances the likelihood that the planned crime will be carried out.  Thus, when a conspiracy exists to commit a crime of violence, … the conspiracy itself poses a substantial risk of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

*Id.* (quoting *Elder*, 88 F.3d at 129).  By quoting *Elder* and citing to *Taylor* and *Mendez*, the court had in mind the definition of "crime of violence" in § 924(c)(3)(B), "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

purposes of the "force clause" is settled law in this Circuit.[4]   I therefore treat the question as unsettled.

### 1.  The Categorical Framework

The Supreme Court established a categorical framework to determine whether a predicate offense of conviction qualifies as a generic federal offense in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990), and, more recently, in *Descamps v. United States*, 133 S. Ct. 2276, 2282-85 (2013) (examining prior conviction for purposes of a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e)).  The framework requires the court to compare the elements of the predicate offense—here, Hobbs Act robbery—with the elements of the generic federal offense— here, "crime of violence" as defined in the "force clause."  *See United States v. Castro-Vazquez*, 802 F.3d 28, 35 (1st Cir. 2015); *Descamps*, 133 S. Ct. at 2281.  Accordingly, a "categorical approach" applies to the determination of whether an offense meets the definition of "crime of violence" in 18 U.S.C.A. § 924(c)(3)(A).  *See Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004) (stating that the language of 18 U.S.C.A. § 16,[5] which uses the

---

[4]  As another court observed, "[p]rior to 2015, the argument that Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3) would have been futile because . . . robbery is an offence 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense' under the Residual Clause[.]"  *United States v. Pena*, 2016 WL 690746, at *4 n.3 (S.D.N.Y. Feb. 11, 2016) (citations omitted).  However, the Supreme Court's decision in *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), holding the residual clause of the Armed Career Criminal Act in § 924(e)(2)(B)(ii) unconstitutionally vague, has caused defendants to "challenge the constitutionality of similarly-worded crime of violence residual clauses in other statutes, including Section 924(c)(3)," and thereby also generated litigation around the "force clause," § 924(c)(3)(A).  *See Pena*, 2016 WL 690746, at *4 n.3.

[5]  Section 16 of Title 18 contains a generally applicable definition of "crime of violence," which is nearly identical to the definition of "crime of violence" in § 924(c)(3).  Section 16 reads:

> The term "crime of violence" means--
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

terms "offense," "an element," and "by its nature," requires courts "to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [defendant's] crime").

> Under [a categorical] approach, if the statute has the same elements as the "generic" crime as defined in the guidelines, then the prior conviction serves as a predicate offense under the guidelines. If the elements of the indivisible statute sweep more broadly than the generic crime, then the conviction cannot count as a predicate offense, "*even if* the defendant actually committed the offense in its generic form."

*Castro-Vazquez*, 802 F.3d at 35 (emphasis in text) (citations omitted) (discussing the categorical framework for analyzing prior convictions for purposes of a sentence enhancement under U.S.S.G. § 2K2.1(a)(2)).

In *Descamps* the Supreme Court also recognized that a "modified categorical approach" may apply in circumstances where the predicate offense statute is "divisible," meaning that the relevant statute "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Descamps*, 133 S. Ct. at 2281. In those cases, courts may consult "a limited set of '*Shepard*' documents, such as the charging documents, plea agreements, plea colloquies, jury instructions, and verdict forms, . . . to determine which of a statute's alternative elements formed the basis of the prior conviction." *Castro-Vazquez*, 802 F.3d at 35 (citing *Descamps*, 133 S. Ct. at 2283-84) (citing *Shepard v. United States*, 544 U.S. 13, 17, 25-26 (2005)); *United States v. Morales*,

---

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C.A. § 16 (2015). Section 924(c)(3) is slightly different in that it specifies "felony" in the clause introducing subsections (A) and (B). *See* 18 U.S.C.A. § 924(c)(3).

801 F.3d 1, 4-5 (1st Cir. 2015) (for divisible statutes, "those providing alternative elements," "limited factual consideration is appropriate to determine under which portion of the statute the offense lies").   The court must then apply the categorical approach to the relevant elements of the divisible statute, that is, "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime."   *Descamps*, 133 S. Ct. at 2281; *see also United States v. Fish*, 758 F.3d 1, 6 (1st Cir. 2014).   The review of the limited set of documents is thus "a tool for implementing the categorical approach[.]"   *Descamps*, 133 S. Ct. at 2284-85.   The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime."   *Id.* at 2285; *Castro-Vazquez*, 802 F.3d at 35.

Accordingly, I turn to consider whether the Hobbs Act, 18 U.S.C.A. § 1951, is divisible or indivisible.[6]

---

[6] The Eastern District of Virginia, in *United States v. McDaniels*, 2015 WL 7455539, at *1-4 (E.D. Va. Nov. 23, 2015), faced with the question of whether Hobbs Act robbery qualifies as a predicate crime of violence for purposes of § 924(c)(1)(A), in the same pre-trial posture as this case, observed that the categorical approach developed in *Taylor* arose in and was "[u]ntil very recently" limited to the sentencing context.   The court concluded that that approach is not appropriate in the context of a pre-trial motion to dismiss counts of an indictment, basing its conclusion in part on the distinct "practical considerations" that hold at the pre-trial and sentencing stages.   *Id.* at *3-4; *see also United States v. D-1 Bijan Woodley*, 2015 WL 7770859, at *4 (E.D. Mich. Dec. 3, 2015); *United States v. Watson*, 2016 WL 866298, at *4 n.3 (D. Haw. Mar. 2, 2016).   The court stated, "the categorical approach is necessary, for example, in the context of ACCA sentencing enhancements in order to avoid the difficult, and in some cases impossible, situations where a sentencing court would be required to re-try the factual basis for prior convictions."   *McDaniels*, 2015 WL 7455539, at *4 (citation and footnote omitted). Accordingly, the court concluded that, in the pre-trial context of a motion to dismiss an indictment, it "can—and indeed must—allow the jury to decide whether the government has proved the elements of the alleged crime beyond a reasonable doubt, including specifically in this case, whether the facts of the robberies establish that they were crimes of violence."   *Id.   McDaniels* suggests a sound basis to reconsider the use of the categorical framework when a case is at the pre-trial stage, as this case is. However, I decline to adopt that approach here because it has not been recognized as a valid approach in the First Circuit.

### 2.  Whether the Hobbs Act, 18 U.S.C.A. § 1951, Is Divisible or Indivisible under the *Descamps* Framework

The elements of the predicate offense at issue here, interference with commerce by threats or violence, are contained in 18 U.S.C.A. § 1951 (2015), which reads in relevant part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section--
>
> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C.A. § 1951.

The first step in the *Descamps* inquiry is to identify the elements of the predicate offense to determine whether the predicate offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," as the generic offense is defined in the "force clause" of § 924(c)(3).  *See Descamps*, 133 S. Ct. at 2281.  The predicate offense statute's elements must be the same as, or narrower than, the elements of the generic offense.  *Id.*

9

There is a split among the federal circuits as to when a statute should be treated as divisible, stemming from whether the statute is construed as setting forth alternate *means* of committing a required element of the offense, or setting forth alternate *elements* of the offense.[7] *See United States v. Mathis*, 786 F.3d 1068, 1075 n.6 (8th Cir. 2015) ("We recognize the elements/means distinction is a matter that splits our sister circuits."), *cert. granted*, 136 S. Ct. 894 (2016).[8]  *Compare Rendon v. Holder*, 764 F.3d 1077, 1084-86, 1088 (9th Cir. 2014) (finding a California burglary statute indivisible because the different possible substantive crimes that the defendant may intend to commit following entry are "alternative means of satisfying one element" of the offense, the element of criminal intent), *and Omargharib v. Holder*, 775 F.3d 192, 198-200 (4th Cir. 2014), *with United States v. Mitchell*, 743 F.3d 1054, 1065-66 (6th Cir. 2014) (finding that the Tennessee robbery statutes in question are divisible because they contain "disjunctive phrasing" in stating the

---

[7] Some of these cases preceded *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), and involved application of the residual clause of ACCA.  However, the respective courts' analysis in relation to the divisibility of the predicate offense statute under the categorical framework stands apart from whether the relevant generic crime was defined in the ACCA residual clause.

[8] The Supreme Court granted certiorari on the Eighth Circuit case, *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015), on January 19, 2016, with oral argument scheduled for April 26, 2016, to address the issue of whether divisibility is determined by the existence of alternative means or alternative elements of the offense.  "15-6092 *Mathis v. United States*," on "Granted & Noted List: Cases for Argument in October Term 2015,"
http://www.supremecourt.gov/grantednotedlist/15grantednotedlist.

The "Question Presented" reads as follows:

> Whether a predicate prior conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), must qualify as such under the elements of the offense simpliciter, without extending the modified categorical approach to separate statutory definitional provisions that merely establish the means by which referenced elements may be satisfied rather than stating alternative elements or versions of the offense?

*Id.*

10

means of robbery, which indicates two alternative elements), *United States v. Clinton*, 591 F.3d 968, 972-73 (7th Cir. 2010), *and United States v. Rodriguez*, 768 F.3d 1270, 1273-74 (10th Cir. 2014).

In *United States v. Carter*, 752 F.3d 8, 17-18 (1st Cir. 2014), the First Circuit treated the "Maine general-purpose assault statute," 17-A M.R.S. § 207, as divisible because it provided for alternate means of commission and alternate forms of intent. The court explained:

> The Maine general-purpose assault statute is divisible into six permutations of subsumed offenses, based on the combination of one element from each of two categories: (1) mens rea ("intentionally, knowingly or recklessly"), and (2) actus reus ("causes bodily injury or offensive physical contact to another person").

*Carter*, 752 F.3d at 17-18 (quoting 17-A M.R.S. § 207(1)(A)); *see also United States v. Voisine*, 778 F.3d 176, 192-93 (1st Cir. 2015), *cert. granted in part*, 136 S. Ct. 386 (2015).

Douglas argues that robbery and extortion, as identified and defined in the Hobbs Act, should be viewed as alternate *means* of committing a Hobbs Act violation because they are differentiated only by the state of mind of the victim. Therefore, he contends, a categorical approach applies. *See* ECF No. 152 at 6-9; ECF No. 159 at 4 (citing *Schad v. Arizona*, 501 U.S. 624, 631, 633, 636 (1991); *United States v. UCO Oil Co.*, 546 F.2d 833, 836 (9th Cir. 1976)). The Government asserts that the Hobbs Act statute is divisible because it "comprises multiple, alternative versions of one crime[,]" and therefore requires the application of the modified categorical approach under *Descamps*. *See* ECF No. 158 at 2; ECF No. 160 at 1-2.

Section 1951 may be violated by committing one of three different acts—robbery, extortion, or committing or threatening physical violence as described in the statute.  *See* 18 U.S.C.A. § 1951(a); *see also Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 13, 22-23 (2006).[9]  The statute contains separate definitions of robbery and extortion, which in turn set forth different possible forms of commission of robbery and of extortion.  *See* 18 U.S.C.A. §§ 1951(b)(1)-(2).  As defined, "robbery" and "extortion" describe discrete ways of obtaining property from another.  In the case of robbery, the property must be taken or obtained against the will of the victim.  *Id.* § 1951(b)(1).  In the case of extortion, the property must be obtained with the victim's consent.  *Id.* § 1951(b)(2).  This material distinction is substantial and represents more than mere alternate means by which an offender may commit the same criminal act.  Rather, § 1951 is most logically read as presenting alternate elements by which the offense of "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce" may be committed.  *Id.* § 1951(a); *see also Evans v. United States*, 504 U.S. 255 (1992) (treating the crime of extortion under the Hobbs Act as a discrete offense); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) (same); *Stirone v. United States*, 361 U.S. 212, 218 (1960) (explaining, with respect to Hobbs Act extortion, "there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion," and that both elements have to be

---

[9]  In *Scheidler* the Supreme Court held, with respect to the phrase "commits or threatens physical violence to any person or property[,]" that the Hobbs Act prohibits acts or threats of physical violence in furtherance of a plan or purpose to engage in robbery or extortion to affect interstate commerce. *Scheidler*, 547 U.S. at 22-23.  In reaching its conclusion, the Court agreed with the Government's position in that case that the clause "would apply to a defendant who injured bystanders during a robbery, permitting the Government to charge that defendant with the Hobbs Act crime of robbery and the separate Hobbs Act crime of using violence in furtherance of the robbery."  *Id.* at 22 (citing Tr. of Oral Arg. 22).

charged).  This conclusion aligns with the common understanding that robbery and extortion are discrete crimes.

Because robbery is an element under § 1951 and the statute is divisible, a modified categorical approach that considers relevant *Shepard* documents is required to determine which of the "multiple, alternative versions" of a Hobbs Act violation forms the predicate offense in this case.  *See Castro-Vazquez*, 802 F.3d at 35; *Carter*, 752 F.3d at 17-19; *see also United States v. Castleman*, 134 S. Ct. 1405, 1413-15 (2014).  Here, the Indictment,[10] a permissible *Shepard* document, specifies that Douglas is charged with conspiracy to commit a Hobbs Act *robbery*.  Thus the question

---

[10] Count Two of the Indictment leaves no doubt that Douglas is charged with Hobbs Act robbery and not Hobbs Act extortion:

### COUNT TWO
### Conspiracy to Commit Hobbs Act Robbery

From about July 26, 2014 until about August 2, 2014, in the District of Maine, Defendants [Williams, Lara, and Douglas] knowingly and intentionally conspired with one another and others known and unknown to obstruct, delay and affect commerce and the movement of articles in commerce, namely illegal drugs and drug trafficking proceeds, by robbery.  Specifically, the defendants agreed together and with others to steal Percocet (oxycodone) pills and any proceeds from the trafficking of such illegal drugs from a Minot, Maine residence.  On about August 2, 2014, the defendants entered the Minot home with the intent to take such personal property using actual and threatened force, violence, and fear of immediate and future injury.  At the time of the robbery, Williams and Douglas were each armed with a dangerous weapon, namely, a handgun, and Lara was armed with a dangerous weapon, namely, a crowbar, which all the defendants knew.  At the time, the Defendants had reason to believe the home owner was engaged in illegal drug trafficking, an industry that affects interstate commerce.

Thus, the Defendants violated Title 18, United States Code, Section 1951(a).

ECF No. 25 at 1-2.

13

narrows to whether a Hobbs Act robbery[11] qualifies as a "crime of violence" for purposes of the "force clause," § 924(c)(3)(A).

## B.    Whether Hobbs Act Robbery Satisfies the Force Clause's Element of "Physical Force"

The definition of "crime of violence" in § 924(c)(3)(A) requires the element of "physical force," which has been construed as meaning violent force.  *See Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) (finding that the phrase "physical force" in § 924(e)(2)(B)(i) means "*violent* force—that is, force capable of causing physical pain or injury to another person[,]" given its "context of a statutory definition of '*violent* felony'") (emphasis in text); *cf. Castleman*, 134 S. Ct. at 1409-13 (distinguishing the meaning ascribed to the phrase "physical force" in § 924(e)(2)(B)(i) in *Curtis Johnson* in construing the phrase "physical force" as used in § 921(a)(33)(A)(ii), on the basis that the common-law meaning of "force" fits the phrase "physical force" in the definition of a "misdemeanor crime of domestic violence," for purposes of a § 922(g)(9) charge).  The Supreme Court in *Curtis Johnson* stated that the adjective "physical" in the phrase "physical force" in § 924(e)(2)(B)(i) "plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force."  *Curtis Johnson*, 559 U.S. at 138.

Douglas argues that because a Hobbs Act robbery "can be accomplished by the act of placing another in fear of injury[,]" which "at best, constitutes a threat of *injury*

---

[11]  I address in Section I.B.3, *infra*, why conspiracy to commit a Hobbs Act robbery does not warrant a different analysis from a Hobbs Act robbery.

to another," it does not require the use or threatened use of violent force. ECF No. 112 at 5 (emphasis in text). He cites in support of his argument *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), in particular the Fourth Circuit's reasoning that there are many ways in which physical injury, including death, can result without the use of violent force. ECF No. 112 at 5-7 (citing *Torres-Miguel*, 701 F.3d at 168-69). In *Torres-Miguel*, the Fourth Circuit considered whether a crime under California state law, "willfully threaten[ing] to commit a crime which will result in death or great bodily injury to another person . . . ," *Torres-Miguel*, 701 F.3d at 167-68 (quoting Cal. Penal Code § 422(a)) (emphasis removed), qualified categorically as a "crime of violence" for purposes of a sentence enhancement under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) (U.S. Sentencing Comm'n 2011),[12] *id.* at 166-68.

*Torres-Miguel* held that, contrary to the conclusion of the Ninth Circuit in an earlier case, the California statute did not contain any element that "necessarily include[s] a threatened *use* of physical force to accomplish" the result of death or great bodily injury to another. *Id.* at 168 (internal quotation marks omitted) (emphasis in text). The court reasoned that a crime may result in death or serious injury without involving the use or threatened use of physical force, for instance, a threat to poison another. *Id.* at 168-69. The court also cited other circuit opinions recognizing that a

---

[12]  Sentencing Guideline § 2L1.2 cmt. n.1(B)(iii) defines "[c]rime of violence" to include a number of enumerated offenses under federal, state, or local law and "any other offense under federal, state, or local law that *has as an element the use, attempted use, or threatened use of physical force against the person of another*." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added). The last clause is nearly identical to the definition of "crime of violence" in § 924(c)(3)(A).

state offense can result in physical injury or death but not involve the use or threatened use of physical force, such as third-degree assault or reckless endangerment. *Id.* at 169 (citing *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003); *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005); *Dalton v. Ashcroft*, 257 F.3d 200, 207 (2d Cir. 2001)).

In *Castleman*, the Supreme Court rejected the reasoning applied in *Torres-Miguel* and the idea that force, if indirectly applied such as by the use of poison, is not physical force. *Castleman*, 134 S. Ct. at 1414-15; *see also McDaniels*, 2015 WL 7455539, at *4-5; *United States v. Bell*, 2016 WL 344749, at *7-8 (N.D. Cal. Jan. 28, 2016).[13] The Court explained: "The use of force . . . is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Castleman*, 134 S. Ct. at 1415 (internal quotation marks and brackets omitted).

Taken together, *Curtis Johnson*, 559 U.S. at 140 (emphasis removed), and *Castleman*, 134 S. Ct. at 1414-15, counsel that the definition of "physical force" in the "force clause," § 924(c)(3)(A), means "violent force—that is, force capable of causing physical pain or injury to another person[,]" whether that force be directly or indirectly applied.

---

[13] Although *Castleman* dealt with a different statutory provision, and, as the Court itself stated, was construing the phrase "physical force" in the context of the definition of a "misdemeanor crime of domestic violence," which in fact mandated the broader, common-law-based scope of meaning of the phrase "physical force," *see Castleman*, 134 S. Ct. at 1409-13, the Court's reasoning relates to the meaning of "use" of force, *see id.* at 1414-15. It is equally applicable to violent or non-violent force. *See Bell*, 2016 WL 344749, at *8.

### 1. Whether the Use, Attempted Use, or Threatened Use of Physical Force Is an Element of Hobbs Act Robbery Committed by Placing Another in "Fear of Injury"

Under the *Descamps* standard, the specific question presented here is whether the predicate statute's "elements are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281. Here, the predicate offense statute, 18 U.S.C.A. § 1951(b)(1), satisfies this standard in relation to the "force clause," § 924(c)(3)(A), because every method of committing a Hobbs Act robbery, as defined in the statute, involves the use, attempted use, or threatened use of physical force against the person or property of another. Title 18 U.S.C.A. § 1951 defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property[.]" 18 U.S.C.A. § 1951(b)(1).

It is self-evident that a Hobbs Act robbery committed by means of "actual or threatened force" or "violence" meets the required "physical force" element. Contrary to Douglas' argument, the statute's remaining means of committing a robbery— through "fear of injury, immediate or future"—also meets the element of physical force. A "fear of injury" means fearing injury that will be produced by violent force, that is, force capable of causing physical pain or injury. As another court recently explained, "the text, history, and context of the Hobbs Act compel a reading of the phrase 'fear of injury' that is limited to fear of injury from the use of force." *Pena*, 2016 WL 690746, at *8. The court in *Pena* reasoned that "actual or threatened force" and "violence," which precede "fear of injury" in the list of means of robbery in §

1951(b)(1), all involve force and applied the canon of *noscitur a sociis*[14] to interpret "fear of injury" to "share this attribute, meaning that it is best understood as fear of injury *from the use of force*." *Id.* (citation omitted) (emphasis in text).  The court further observed that "Hobbs Act robbery is modeled on common law robbery, and robbery implies 'the notion of a forcible dispossession of property.'" *Id.* at *9 (citation omitted).  Moreover, "fear of injury" must be read in the context of the statute's requirement that the unlawful taking of property must be "from the person or in the presence of another[.]" *Id.*  The Hobbs Act robbery provision's "emphasis on proximity to the victim implies that the threatened injuries are of the sort that require proximity—*i.e.*, injuries from the use of force." *Id.*  This point is especially persuasive viewing the Hobbs Act robbery provision in juxtaposition to the definition of Hobbs Act extortion, which does not suggest any requirement of physical proximity.  *Id.*

Douglas raises additional hypothetical examples in support of his view that fear of injury, for purposes of Hobbs Act robbery, does not satisfy the element of physical force.  It is worth noting that "in assessing whether the elements of the candidate proposed as a predicate crime are overbroad, we need not consider fanciful, hypothetical scenarios." *Fish*, 758 F.3d at 6 (citing *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language.  It requires a realistic probability, not a theoretical possibility, that the State would apply its statute. . . ."); *James v. United States*, 550 U.S. 192, 208 (2007), *overruled on other grounds by Samuel Johnson v.*

---

[14]  Meaning, "it is known by its associates[.]"  Black's Law Dictionary 1224 (10th ed. 2014).

*United States*, 135 S. Ct. 2551, 2563 (2015)); *see also Voisine*, 778 F.3d at 185; *Whyte v. Lynch*, 807 F.3d 463, 467 (1st Cir. 2015).

Douglas posits that a person can be placed in fear of injury without a threat of physical force, such as a robbery committed by the offender threatening to lock a person up in a car on a hot day, or by threatening to lock a person at an abandoned site without food or shelter. *See* ECF No. 112 at 7-8. As the Supreme Court noted in *Castleman*, however, "physical force" is "force exerted by and through concrete bodies, as opposed to intellectual force or emotional force." *Castleman*, 134 S. Ct. at 1414 (quoting *Curtis Johnson*, 559 U.S. at 138) (internal quotation marks omitted). A person locked in a hot car or abandoned without food or shelter would fear injuries from physical forces that were indirectly produced by the physical actions of the offender. *See Pena*, 2016 WL 690746, at *10 ("Poison and hazardous chemicals are physical forces strong enough to cause injury, as is extreme heat.").[15] Hobbs Act robbery encompasses a fear of injury produced by physical force that is one step removed from, but caused by, the physical force of the offender.

Although not cited by Douglas or the Government, *Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015), recently considered a hypothetical that demonstrates that it is possible for criminal conduct to involve injury to a person without the offender having used or threatened force. The issue in *Whyte* was whether Connecticut's third-degree assault statute qualified as a predicate "crime of violence" under 18 U.S.C.A. § 16,

---

[15] The court in *Pena* concluded that the definition of "physical force" as "violent force" in *Curtis Johnson* was specific to the "force clause" of the ACCA, § 924(e)(2)(B)(i), and applied a different definition of the term "physical force" for purposes of § 924(c). *Pena*, 2016 WL 690746, at *3-4. I find its reasoning regarding the basic concept of "physical force" nevertheless valid to invoke here.

incorporated by reference into a provision of the Immigration and Nationality Act ("INA"). *Id.* at 464-66. The opinion cited the following hypothetical: "[A] person could intentionally cause physical injury by telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim." *Id.* at 469 (quoting *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006)) (internal quotation marks omitted). The court concluded that there was a "realistic probability" that the Connecticut statute could punish conduct resulting in physical injury that did not involve physical force and, therefore, the third-degree assault conviction could not serve as a predicate offense under the "force clause" of 18 U.S.C.A. § 16. *Id.* at 469, 471-72. This conclusion is inapposite to the issue presented here because a Hobbs Act robbery by means of "fear of injury" requires proof that the victim feared injury, which necessarily requires proof of actual or threatened force sufficient to cause injury. Thus, there is not a realistic probability that the hypothetical scenario considered in *Whyte* could give rise to a charge of Hobbs Act robbery involving fear of injury. *See id.* at 467.

Under the modified categorical approach, Hobbs Act robbery categorically qualifies as a "crime of violence" under the "force clause," § 924(c)(3)(A), because the offense as defined in § 1951(b)(1), carried out by any of the listed means, including by "fear of injury," "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]"

### 2. Whether Hobbs Act Robbery Requires Intentional Use of Force

Douglas next argues that a victim of a Hobbs Act robbery could have fear of injury without the defendant having intentionally caused it and contends that §

924(c)(3)(A) requires an intentional use of force.  ECF No. 112 at 8-10.  He analogizes to the commission of bank robbery by means of intimidation, which, as several circuits have interpreted the relevant federal provision, does not require that the defendant intended the intimidation, and advances that "robbery" as defined in the Hobbs Act similarly does not require a defendant's intent that the victim be put in "fear of injury."[16] *Id.* at 9-10 (citing, *e.g.*, *United States v. Woodrup*, 86 F.3d 359, 363-64 (4th Cir. 1996) (defining the test for "intimidation" under 18 U.S.C.A. § 2113(a) as "whether an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts" and interpreting the provision as not requiring that the defendant intended the intimidation) (internal quotation marks and citation omitted); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003)).

Douglas cites a Fourth Circuit case, *Garcia v. Gonzalez*, 455 F.3d 465, 468 (4th Cir. 2006), for the proposition that under the "force clause" of § 924(c)(3), the physical force or threat thereof must be used intentionally for the offense to qualify as a "crime of violence."  ECF No. 112 at 9.  In *Garcia*, the Fourth Circuit considered whether second-degree reckless assault under New York state law qualified as a "crime of violence" under 18 U.S.C.A. § 16 for purposes of an Immigration and Nationality Act provision.  *Garcia*, 455 F.3d at 467-69.  The court concluded that § 16(a) did not apply because the New York statute defined the offense as "recklessly caus[ing] serious

---

[16]  The federal bank robbery statute defines the offense, in part, as follows:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to . . . any bank, credit union, or any savings and loan association[.]

18 U.S.C.A. § 2113(a) (2015).

physical injury to another person by means of a deadly weapon or a dangerous instrument," and found that this definition "does not contain an element that there be the intentional employment of physical force against a person or thing[.]"  *Id.* at 468; *see also Leocal*, 543 U.S. at 9 ("The key phrase in § 16(a)—the 'use … of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct.") (citations omitted), *quoted in Whyte*, 807 F.3d at 468.

Unlike the predicate offense statute that criminalized reckless assault that was at issue in *Garcia*, the predicate offense at issue here, Hobbs Act robbery, requires proof that a defendant "knowingly and willfully" obtained property from the person or corporation robbed by means of robbery, *see* First Circuit Pattern Jury Instructions at 4.18.1951, and thus requires a defendant to have acted intentionally. *See United States v. Boylan*, 898 F.2d 230, 253 (1st Cir. 1990) (finding no error in challenged mens rea instruction for Hobbs Act violations by extortion where court instructed jury "that the government had to prove that 'defendant willfully and knowingly obtained property from the person[]'"); *see also United States v. Cruzado-Laureano*, 404 F.3d 470, 480 (1st Cir. 2005) (stating that to establish a Hobbs Act violation, the Government must prove beyond a reasonable doubt that the defendant induced someone to part with property, the defendant knowingly and willfully did so by extortionate means, and the extortionate transaction affected interstate commerce).  Because a Hobbs Act violation requires that a defendant knowingly and willfully obtained property from another by robbery, a Hobbs Act violation committed

by robbery does not, as Douglas argues, allow for something less than intentional conduct by the offender.

### 3.   Conspiracy

Finally, Douglas also points to the fact that it is not a Hobbs Act robbery, but rather conspiracy to commit Hobbs Act robbery, that is charged in Count Two and cites cases from two Circuits as examples of courts limiting their categorical analysis to the elements of the conspiracy itself, and not considering the elements of the underlying offense that was the object of the conspiracy.  ECF No. 112 at 17-19 & n.9 (citing, among others, *United States v. Whitson*, 597 F.3d 1218, 1222 (11th Cir. 2010) (per curiam) (analyzing predicate offense of conviction for purposes of a sentence enhancement under U.S.S.G. § 4B1.1); *United States v. Fell*, 511 F.3d 1035, 1039-41 (10th Cir. 2007) (analyzing predicate offense of conviction for purposes of applying ACCA)).[17]  He argues that that is the appropriate analysis in relation to the "force clause" because, unlike the "residual clause," it does not involve a "broader risk analysis."  *Id.* at 18-19.

I find that this issue is resolved simply by reference to the statute—the Hobbs Act itself includes a conspiracy as an element: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion *or attempts or conspires so to do*[.]"  18 U.S.C.A. § 1951(a) (emphasis added).  Under the statute, interference with commerce by robbery is not a distinct offense from conspiracy to interfere with commerce by

---

[17]  These decisions address in part the "residual clause" definition of the relevant generic offense and preceded *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015).

23

robbery.  Therefore, the categorical analysis does not differ with respect to a charge of Hobbs Act robbery or a charge of conspiracy to commit a Hobbs Act robbery.

### C.   Whether the Definition of "Crime of Violence" in 18 U.S.C.A. § 924(c)(3)(B) ("Residual Clause") Is Constitutionally Void for Vagueness

Having concluded that a conspiracy to commit a Hobbs Act robbery may serve as a predicate "crime of violence" under the "force clause," 18 U.S.C.A. § 924(c)(3)(A), I do not reach Douglas' second major argument: that the "residual clause," § 924(c)(3)(B), is unconstitutionally vague, and, therefore, void.  Whether or not the residual clause is constitutional has no bearing on the Government's reliance on conspiracy to commit a Hobbs Act robbery as the predicate offense under the "force clause."  The constitutional review of a statute is not appropriate where it is not necessary to decide the case.  *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) ("It is bedrock that the long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (internal quotation marks and citations omitted).

## II. CONCLUSION

For the reasons stated above, Douglas' motion to dismiss a portion of Count Six of the Indictment (ECF No. 112) is **DENIED**.  In addition, Defendant Williams' motion to dismiss a portion of Count Four of the Indictment (ECF No. 149) and Defendant Lara's motion to dismiss a portion of Count Seven of the Indictment (ECF No. 155) are **DENIED**.

**SO ORDERED.**

Dated this 15th day of April, 2016.

/s/    JON D. LEVY
**U.S. DISTRICT JUDGE**